**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
(212) 237-1000
Charles E. Simpson (CES-2130)
Derek Etheridge (DE-9344)

Appearing *Pro Se*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

WINDELS MARX LANE & MITTENDORF, LLP,      :

                                      Appellant,      :          07 Civ. 10375 (SHS)
                                                      :          USBC 06-B-11707 (AJG)
                                                      :
            -against-                                 :
                                                      :
SOURCE ENTERPRISES, INC., *et al.*,                   :
                                                      :
                                      Appellees.      :
                                                      :
-------------------------------------------------------------- x

---

### APPELLANT'S BRIEF

---

**WINDELS MARX LANE & MITTENDORF, LLP**

Charles E. Simpson
Derek Etheridge
156 West 56th Street
New York, New York 10019
(212) 237-1000

Appearing *Pro Se*

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*FDIC v. Colonial Realty Co.*,
   966 F.2d 57 (2d Cir. 1992)...................................................................................10

*Hager v. Gibson*,
   108 F.3d 35 (4th Cir. 1987) ................................................................................11

*In re 599 Consumer Elecs. Inc.*,
   195 B.R. 244 (S.D.N.Y. 1996)....................................................................... 8-9, 11

*In re Arko Properties, Inc.*, 207 B.R. 624 (Bankr. E.D. Ark. 1997)...............................11

*In re Augie/Restivo Baking Co.*,
   860 F.2d 515 (2d Cir. 1988)............................................................................. 8-9

*In re Bloomingdale Partners*,
   155 B.R. 961 (Bankr. N.D. Ill. 1993) ................................................................17

*In re Concrete Designers, Inc.*,
   173 B.R. 354 (Bankr. S.D. Ohio 1994)..............................................................17

*In re Jefferson Casket Co.*,
   182 F. 689 (N.D.N.Y. 1910) .............................................................................11

*In re Owens Corning*,
   419 F.3d 195 (3rd Cir. 2005) ........................................................................ 7-8

*In re Raljoed Realty Co.*,
   277 F. Supp. 225 (S.D.N.Y. 1967) ....................................................................11

*In re Stavola/Manson Elec. Co., Inc.*, 94 B.R. 21 (Bankr. D. Conn. 1988)...................11

*In re Zaragosa Props., Inc.*,
   156 B.R. 310 (Bankr. M.D. Fla. 1983) ...............................................................11

*Price v. Gurney*,
   324 U.S. 100 (1945).........................................................................................11

## STATUTES, RULES & REGULATIONS

11 U.S.C. Section 101(13) ............................................................................................ 4-5

11 U.S.C. Section 301 ............................................................................................ 4-5, 11

11 U.S.C. Section 303 ............................................................................................ 2, 4-5

11 U.S.C. Section 1121 .................................................................................................16

11 U.S.C. Section 1122(a) ................................................................................ 4, 12-14, 16

11 U.S.C. Section 1123(a)(4) ............................................................................ 4, 13-14, 16

11 U.S.C. Section 1125 ............................................................................................ 16-17

11 U.S.C. Sections 1127(a),(c),(d),(f)(1) and (f)(2) ................................................ 4, 15-17

11 U.S.C. Sections 1129(a)(1) and (2) .......................................................................15-16

Rule 3019 ............................................................................................................ 16-17

Rule 9011 ...............................................................................................................11

## OTHER AUTHORITIES

Christopher W. Frost, *Organizational Form, Misappropriation Risk and the Substantive Consolidation of Corporate Groups*, 44 Hastings L.J. 449, 457 (1993) ...................................8

Mary Elisabeth Kors, *Altered Egos: Deciphering Substantive Consolidation*, 59 U. Pitt. L. Rev. 381, 417-419 (1998) .........................................................................................8

*Amended and Restated By-Laws of Source Enterprises, Inc. and Source Entertainment, Inc.,* Section 3.8.........................................................................................................12

*Fourth Amended Plan of Reorganization*..............................................1, 3-6, 9, 11-17

*Transcript of Confirmation Hearing, September 27, 2007*.........................................9-10

*Transcript of Confirmation Hearing, September 28, 2007*.........................................10, 14

**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
(212) 237-1000
Charles E. Simpson (CES-2130)
Derek Etheridge (DE-9344)

Appearing *Pro Se*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                            :

WINDELS MARX LANE & MITTENDORF, LLP, :     07 Civ. 10375 (SHS)
                            :     USBC 06-B-11707 (AJG)
             Appellant,    :

                            :

    -against-                :

                            :

SOURCE ENTERPRISES, INC., *et al.*,     :

                            :

            Appellees.    :
------------------------------------------------------------x

      Windels Marx Lane & Mittendorf, LLP ("Appellants"), appearing *pro se*, as and for its

Appellant's Brief and in furtherance of Appellant's appeal from the Order of the Honorable

Arthur J. Gonzalez, United States Bankruptcy Judge, confirming the Debtors' Fourth Amended

Plan of Reorganization (the "Plan"), dated August 22, 2007, respectfully represents as follows:

## I. PRELIMINARY STATEMENT

      On January 24, 2006, Windels Marx was retained by Source Enterprises, Inc.

("Enterprises") and Source Entertainment, Inc. ("Entertainment") as counsel to Enterprises and

Entertainment and each of their separately incorporated subsidiaries and affiliates. Prior thereto,

in July 2005, Windels Marx had been retained to represent Black Enterprises/Greenwich Street

Corporate Growth Partners LLP, the holder of the Debtors' Series A Preferred Stock, which was

also the Debtors' DIP Lender and the "Proponent" of the Debtors' Plan of Reorganization in the

Debtors' chapter 11 case. On July 27, 2006 (the "Petition Date"), three (3) creditors filed an involuntary petition against Enterprises under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") pursuant to section 303 of the Bankruptcy Code.

On August 21, 2006, Enterprises, then represented by Windels Marx, moved the Bankruptcy Court for an Order converting the involuntary chapter 7 case to a case under chapter 11 of the Bankruptcy Code (the "Conversion Motion"). At the September 20, 2006 hearing on the Conversion Motion, the Bankruptcy Court converted the chapter 7 case to a case under chapter 11 and on September 21, 2006 entered an Order to that effect. By Order, dated November 1, 2006, the Bankruptcy Court authorized the *nunc pro tunc* retention of Windels Marx as counsel to Enterprises in its chapter 11 case. Windels Marx was allowed to withdraw as counsel to enterprises by Order of the Bankruptcy Court, dated February 1, 2007.

On April 27, 2007, subsequent to Windels Marx' withdrawal as Enterprises' chapter 11 counsel, and now being represented by Curtis Mallet-Prevost Colt & Mosle LLP, Entertainment and Source Magazine, LLC ("Magazine") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, allegedly including as debtors nineteen (19) subsidiaries and/or affiliates of Enterprises, Entertainment and Magazine as "pseudonymous entities." By Order of the Bankruptcy Court, dated May 8, 2007, the chapter 11 cases of Enterprises, Entertainment and Magazine, plus the "pseudonymous entities", were directed to be jointly administered and procedurally consolidated. Under the Plan, the Debtors are substantively consolidated with their subsidiaries and affiliated entities.

**The Debtors**

Enterprises is engaged in the publishing business, including the publication of the monthly magazine *The Source* and, from time to time *The Source Latino*. Entertainment and Magazine were involved, directly and through their subsidiaries and affiliates, in several multimedia endeavors, including the sale of Hip-Hop CD's, ringtones for cellular telephones and Personal Digital Assistants (PDA's), television syndication and trademark licensing.

Enterprises and Entertainment are also affiliated with and hold interests in several separately incorporated, direct and indirect subsidiaries, including: Source Holdings, LLC, Source Magazine, LLC, Source Sound Lab, LLC , Source Merchandizing, LLC, The Source.com, LLC, Source Music, LLC, Source Broadcast Media and Source Entertainment, LLC. A chart setting forth the relationships of those subsidiaries and affiliates, as well as separate certificates of incorporation or filing of partnership certificates are annexed as Exhibits "A" and "B" to the Objection of Windels Marx Lane & Mittendorf, LLP with Respect to the Proposed Fourth Amended Plan of Reorganization of the Source Debtors.

**The Plan and Disclosure Statement**

On October 19, 2006, and at the direction of BE/GS, Enterprises filed its Plan (the "Original Plan") and Disclosure Statement (the "Original Disclosure Statement"). Shortly thereafter, on November 14, 2006, the United States Trustee filed an objection to the Original Disclosure Statement. On November 14, 2006, the Official Committee of Unsecured Creditors (the "Committee") also filed an objection to the Original Disclosure Statement on similar grounds.

On June 6, 2007, subsequent to Entertainment and Magazine filing their chapter 11 petitions, the Debtors filed an Amended Disclosure Statement and Amended Plan on behalf of

the jointly administered Debtors.  On August 20, 2007, the Debtors filed their Third Amended

Plan of Reorganization of the Source Debtors, which Plan was amended three (3) days later by

the Debtors' Fourth Amended Plan of Reorganization (the "Fourth Amended Plan") of the

Source Debtors filed with the Bankruptcy Court on August 23, 2007.  On September 24, 2007,

Windels Marx filed an objection to the Fourth Amended Plan ("Windels Marx's Objection to

Plan").

The Fourth Amended Plan was confirmed by Order dated October 1, 2007.  Windels

Marx filed the instant appeal on October 11, 2007.  The issues presented on appeal are as

follows:

i) Whether a limited liability company or corporation, formed under the laws of a State within the United States of America, duly registered with the appropriate agency of the State in which they were incorporated and in current good standing, that has not (i) had an involuntary case commenced against it pursuant to Section 303, or (ii) filed a voluntary petition pursuant to 11 U.S.C. Section 301, qualifies as a "debtor" under 11 U.S.C. Section 101(13).

ii) Whether a limited liability company or corporation, whose by-laws require the consent of each board member prior to any action being taken without a board meeting, can file a voluntary petition for relief under 11 U.S.C. Section 301 when (i) no meeting was held in which the filing of a voluntary chapter 11 petition was either contemplated or decided upon, and (ii) several board members did not receive notice that the company was filing a chapter 11 petition.

iii) Whether the Plan violates Section 1122(a) of the Bankruptcy Code by placing creditors with substantially dissimilar claims in the same class.

iv) Whether the Plan violates Section 1123(a)(4) of the Bankruptcy Code by providing dissimilar treatment to creditors in the same class.

v) Whether the modification of the Plan to include the agreement by and among the Reorganized Debtors, Black Enterprise Greenwich Street Corporate Growth Partners, L.P., L. Londell McMillan, P.C. and NorthStar Marketing Group, Inc., to sell Reorganized Source Common Stock upon confirmation of the Plan violates Sections 1127(a), (c), (d), (f)(1) and (f)(2) of the Bankruptcy Code.

## II.    DISCUSSION

**Issue (i): Whether a limited liability company or corporation, formed under the laws of a State within the United States of America, duly registered with the appropriate agency of the State in which they were incorporated and in current good standing, that has not (i) had an involuntary case commenced against it pursuant to Section 303, or (ii) filed a voluntary petition pursuant to 11 U.S.C. Section 301, qualifies as a "debtor" under 11 U.S.C. Section 101(13).**

Following the chapter 11 filings of Entertainment and Magazine, and the subsequent joint administration of those cases with the chapter 11 case of Enterprises, the Debtors characterize several of their subsidiaries and affiliates as additional Debtors in this jointly administered case, even though none of the said subsidiaries and/or affiliates filed voluntary petitions for relief under any chapter of the Bankruptcy Code. In the Plan, the term "Debtors" is defined as such:

> "Debtors" means, collectively, all of the following: (1) Source Enterprises, Inc., a Delaware corporation ("Enterprises"), (2) Source Entertainment, Inc., a Delaware corporation ("Entertainment"), (3) Source Magazine, LLC, a New York company ("Magazine") <u>and each of the following entities and pseudonyms by which any or all of Enterprises, Entertainment and/or Magazine have been known</u>, including (4) Source Entertainment, LLC, a California company, (5) Source Holdings, LLC, a Delaware company, (6) Source Merchandising, LLC, a New York Company, (7) The Source.com, LLC, a New York company, (10) Source Broadcast Media, LLC, a New York Company, (11) The Source Magazine, (15) The Source Awards, (16) Hip Hop Hits, (17) Source Sports, (18) Unsigned Hype LLC, and (19) Source Media and Merchandising, Inc." (Emphasis Added.)

*Fourth Amended Plan of Reorganization*, Page 5, Paragraph 32.

Several of these "pseudonymous" entities are legitimate entities that are registered with the respective Departments of State in which they were initially filed and incorporated. A rudimentary search reveals that Source.com, Inc., Source Holdings, LLC, Source Sound Lab, LLC, Source Broadcast Media, LLC, Source Music, LLC, and Source Merchandising, LLC, are not in fact pseudonyms for Enterprises, Entertainment and/or Magazine, but are legitimate, incorporated entities in their own right that have, at one time or another, conducted business

independently of Enterprises, Entertainment and Magazine.  See, Exhibit "B" to Windels Marx's Objection to Plan.

In fact, several of these "pseudonymous" entities are named defendants in litigation pending in state courts throughout the country, are and have been incurring legal fees and expenses and should not have received the benefits of the automatic stay without first filing petitions for relief under the Bankruptcy Code and providing the information required by the Bankruptcy Code and Rules of Bankruptcy Procedure.  In addition, some of these entities are signatories to contracts that realize income, may ultimately result in the realization of income or render the particular entity liable for the payment of indebtedness.[1]  For example, a number of these entities are or have been represented by Windels Marx in litigation in the state courts, which entities were not then subject to the Bankruptcy Court's jurisdiction and for which legal fees are owed and formed the basis of Windels Marx' proof of claims.  Also, commissions are owed by third parties to these entities over which there are charging and judgment liens. Notwithstanding the foregoing, Enterprises, Entertainment, Magazine and each of the non-debtor subsidiaries and affiliates were substantively consolidated under the Fourth Amended Plan, even though the characterization of these entities as merely pseudonymous outfits is a misrepresentation of their true nature.  Irrespective of whether or not these "pseudonymous" entities have assets or not, lack independent books and records or lack bank accounts, they ought not be afforded relief under any chapter of the Bankruptcy Code without having appropriately filed a voluntary petition entitling such relief and under no circumstances should these entities

---

[1] The Disclosure Statement acknowledges that "certain intellectual property, including, without limitation, certain trademarks and copyrights, and certain contracts, are held in the name of Entertainment, and/or Magazine and/or Unsigned Hype, and/or Source Media and Merchandising, LLC..." Disclosure Statement, Page 22. A thorough examination of all trademarks and copyrights held by the Debtors and/or their affiliates and subsidiaries and all contracts to which the Debtors and/or its affiliates and subsidiaries are signatories will doubtlessly reveal that several additional unnamed entities hold, or are signatories to, trademarks, copyrights and contracts.

have been permitted to piggyback off of the chapter 11 protection afforded Enterprises,

Entertainment and Magazine.

A number of courts have outlined the principles to be advanced by substantive consolidation. These factors have been articulated thusly:

(1) Limiting the cross-creep of liability by respecting entity separateness is a fundamental ground rule. As a result, the general expectation of state law and of the Bankruptcy Code, and thus of commercial markets, is that courts respect entity separateness absent compelling circumstances calling equity (and then only possibly substantive consolidation) into play.

(2) The harms substantive consolidation addresses are nearly always those caused by debtors (and entities they control) who disregard separateness. Harms caused by creditors typically are remedied by provisions found in the Bankruptcy Code.

(3) Mere benefit to the administration of the case (for example, allowing a court to simplify a case by avoiding other issues or to make postpetition accounting more convenient) is hardly a harm calling substantive consolidation into play.

(4) ...[B]ecause substantive consolidation is extreme (it may affect profoundly creditors' rights and recoveries) and imprecise, this rough justice remedy should be rare and, in any event, one of the last resort after considering and rejecting other remedies (for example, the possibility of more precise remedies conferred by the Bankruptcy Code).

(5) While substantive consolidation may be used defensively to remedy the identifiable harms caused by entangled affairs, it may not be used offensively (e.g., having a primary purpose to disadvantage tactically a group of creditors in the plan process or to alter creditor rights).

*In re Owens Corning*, 419 F.3d 195, 211 (3rd Cir. 2005). Furthermore, the Second Circuit has

admonished that substantive consolidation "is no mere instrument of procedural convenience . . .

but a measure vitally affecting substantive rights" and should be used "sparingly" to avoid "the

dangers in forcing creditors of one debtor to share on a parity with creditors of a less solvent

debtor. . . ." *In re Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988). Ultimately, substantive consolidation should be employed only in the limited circumstance where it ensures "the equitable treatment of *all* creditors." *Id.* (Emphasis added).

Taking into account the foregoing factors and considerations, proponents of substantive consolidation have the burden of showing that either (i) prepetition, the debtor disregarded the separateness of its entities so significantly that its creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) postpetition, the debtors' entities' assets and liabilities are so scrambled that separating them is "either impossible or so costly as to consume the assets" and will hurt all creditors. *Id.* at 518-19. A prima facie case typically exists for the first rationale when, based on the parties' prepetition dealings, a proponent proves corporate disregard creating contractual expectations of creditors that they are dealing with debtors as one indistinguishable entity. *Owens Corning* citing Mary Elisabeth Kors, *Altered Egos: Deciphering Substantive Consolidation*, 59 U. Pitt. L. Rev. 381, 417-418 (1998) (hereinafter cited as "*Kors*"); Christopher W. Frost, *Organizational Form, Misappropriation Risk and the Substantive Consolidation of Corporate Groups*, 44 Hastings L.J. 449, 457 (1993); *Augie/Restivo*, 860 F.2d at 518 (noting that creditors must have dealt with the entities as a single economic unit and not relied on their separate identities in extending credit); *In re 599 Consumer Elecs. Inc.*, 195 B.R. 244, 249 (S.D.N.Y. 1996) (noting that the inquiry centers on "whether *creditors* treated the debtors as a single entity, not whether the managers of the debtors themselves, or consumers, viewed the [entities] as one enterprise") (emphasis in original). Proponents of substantive consolidation who are creditors must also show that in their prepetition course of dealing, they actually had reasonably relied on debtors' supposed unity. *Kors* at 418-19. Creditor opponents of consolidation can nonetheless defeat a prima facie showing regarding the significant extent to

which the debtor disregarded separateness if they can prove they are adversely affected and actually relied on the debtor's separate existence. A prima facie case under the second rationale requires a showing that the commingling of assets and business functions between debtors has resulted in a hopelessly obscure interrelationship which cannot be untangled. *Augie/Restivo*, 860 F.2d at 519. Commingling "can justify substantive consolidation only where the time and expense necessary even to attempt to unscramble them [is] so substantial as to threaten the realization of any net assets for all the creditors . . . or where no accurate identification and allocation of assets is possible." *Id.* (Internal quotations and citation omitted).

In the instant case, the Debtors proffered no evidence of the prepetition disregard of the separateness of the Source entities. To the contrary, each entity was formed for a specific purpose and maintained its own creditor body. In addition, Textron Financial Corporation ("Textron"), the Debtors' senior secured lender, obtained separate loan guarantees from certain of the Debtors' affiliates, clearly evidencing that creditor's recognition that the affiliates were separate entities. *See In re 599 Consumer Elecs.*, 195 B.R. at 249 (denying substantive consolidation, following the *Augie/Restivo* court's specific holding that "a bank's insistence on separate loan guarantees by related corporations displays an understanding that the related corporations are separate entities"); *Augie/Restivo*, 860 F.2d at 519. In fact, at the Confirmation Hearing on the Fourth Amended Plan of Reorganization, Mr. Jeffrey Scott, chairman of the board of Enterprises and Entertainment and Managing Director of BE/GS ("J. Scott"), testified that "the company was bifurcated into two different corporations, Source Entertainment and Source Enterprises. We [BE/GS] owned an equal amount of both..." See *Transcript of Confirmation Hearing, September 27, 2007*, page 236:23. Later in his testimony, J. Scott acknowledged that "[W]e [BE/GS] invested in two companies, and the debt (sic) [Textron] lent

money to probably at least two companies." *Transcript of Confirmation Hearing, September 28, 2007*, page 19:13. J. Scott further answered in the affirmative when asked whether it was correct that at the time BE/GS made its investment in the Source business, it was in fact dealing with a business being conducted by two separate corporate entities. *Transcript of Confirmation Hearing, September 27, 2007*, page 238:4. Finally, when asked whether the intellectual property, including trademarks, copyrights and contracts, are held in the name of Entertainment and/or Magazine, J. Scott stated, "I've seen a list of the trade names, trade marks. The last time I recall seeing them is during the Textron potential auction and they were assigned to various entities and I'm not sure which ones were assigned to which entities." *Transcript of Confirmation Hearing, September 28, 2007*, page 42:23.

Furthermore, and in connection with the foregoing representations by J. Scott, upon the retention of Windels Marx to represent the certain Source entities, the board of directors required that Windels Marx execute two (2) separate retainer agreements for Entertainment and Enterprises, respectively. Indeed, Windels Marx was justified in relying on the representations of the board of directors that there existed, at the very least, two (2) distinct corporate entities that simultaneously conducted business. Windels Marx has been adversely affected by its detrimental reliance upon the separateness of the entities, as Windels Marx continued to represent Entertainment and Magazine prior to the filing of their chapter 11 petitions as well as several of the non-debtor "pseudonymous" entities, only to have the Debtors and BE/GS challenge the propriety of that representation in an effort to avoid paying Windels Marx's legal fees.

"Only through a searching review of the record, on a case-by-case basis, can a court ensure that substantive consolidation effects its sole aim: fairness to all creditors." *FDIC v.*

*Colonial Realty Co.*, 966 F.2d 57, 61 (2d Cir. 1992); *see also In re 599 Consumer Elecs.*, 195

B.R. at 250 (vacating order of substantive consolidation, in part, due to lower court's

"conclusory" findings regarding commingling of debtor entities' assets). In the present case, not

only is the record barren of evidence justifying consolidation, but the Court also forewent any

analysis thereof in determining to consolidate, committing an error as a matter of law.

**Issue (ii): Whether a limited liability company or corporation, whose by-laws require the consent of each board member prior to any action being taken without a meeting, can file a voluntary petition for relief under 11 U.S.C. Section 301 when (i) no meeting was held in which the filing of a voluntary chapter 11 petition was either contemplated or decided upon, and (ii) several board members did not receive notice that the company was filing a chapter 11 petition.**

With respect to these additional "pseudonymous" debtors, the Debtors' Fourth Amended

Plan ignores corporate governance requirements for filing a chapter 11 case. It is well

established that the determination to submit a corporation or limited liability company to the

jurisdiction of the Bankruptcy Court is determined by applicable state law, the corporation's

certificate of incorporation and bylaws, *Price v. Gurney*, 324 U.S. 100, 104 (1945); *In re Raljoed

Realty Co.*, 277 F. Supp. 225, 225-26 (S.D.N.Y. 1967); *Hager v. Gibson*, 108 F.3d 35 (4th Cir.

1987), *In re Arko Properties, Inc.*, 207 B.R. 624 (Bankr. E.D. Ark. 1997); *In re Zaragosa Props.,

Inc.*, 156 B.R. 310 (Bankr. M.D. Fla. 1983). It is the corporation's board of directors who

typically exercise this authority and a petition filed without the authority of the corporation

should be dismissed, *In re Stavola/Manson Elec. Co., Inc.*, 21 C.B.C. 2d 55, 94 B.R. 21 (Bankr.

D. Conn. 1988) and the filers of the petition sanctioned under Bankruptcy Rule 9011. See, *In re

Zaragosa Props. supra*; *see also In re Jefferson Casket Co.*, 182 F. 689, 692 (N.D.N.Y. 1910)

(stating that the court has no jurisdiction over a voluntary debtor whose board of directors has

not authorized its petition); *Raljoed Realty*, 277 F. Supp at 226 ("only the board [of directors] . . .

may authorize the filing of a petition in bankruptcy").

In the instant case the petitions of Enterprises and Magazine were filed at the direction of BE/GS. As set forth in the July 27, 2007 sworn affidavits of David Mays ("Mays"), the sole shareholder of Enterprises and Entertainment, and a director controlling three (3) seats on their respective Boards and Raymond Scott, both members of the Debtors' boards of directors, Mays nor Raymond Scott received any notice of a meeting of any of the boards of the debtors for the purpose of filing a chapter 11 petition. Since, in accordance with Section 3.8 of the Amended and Restated By-Laws, of Enterprises and Entertainment, a copy of which is annexed as Exhibit "C" to Windels Marx's Objection to Plan, action by these corporations without a meeting of the boards of directors can only be taken on the unanimous consent of all of the members of the respective boards, the filing of the petitions for Entertainment and Magazine are without authority and those petitions should be dismissed, as well as the debtors attempts to join the additional "pseudonymous" entities as additional debtors without filing petitions, schedules or statements of financial affairs.

LLC's have requirements similar to those for corporations and are governed by their LLC agreements. Thus, for these "pseudonymous" entities to be properly joined as debtors in this chapter 11 case, their respective members should have called a meeting of their respective boards of directors and voted to have these entities file petitions. This, however, was not done.

**Issue (iii): Whether the Plan violates Section 1122(a) of the Bankruptcy Code by placing creditors with substantially dissimilar claims in the same class.**

Under the Fourth Amended Plan, a "General Unsecured Claim' is defined to include "any Unsecured Claim against any of the Debtors". Therefore, for purposes of this proposed Plan all holders of unsecured claims, regardless of which debtor or "pseudonymous" entity is actually liable for payment of the claim, are lumped together in one pot regardless of the value of the

assets of the claimant's particular debtor.  See, Article IV, B., Class 2 – Unsecured Claims on

page 15 of the Fourth Amended Plan for the treatment of unsecured claimants.

Section 1122(a) of the Bankruptcy Code provides with respect to equal treatment of

claimants that:

> "(a) Except as provided in subsection (b) of this section, a plan
> may place a claim...in a particular class only if such claim...is
> substantially similar to the other claims...of such class" (Emphasis
> added.)

Thus, a plan cannot be confirmed unless it satisfies §1122(a) on treatment and, also, §1123(a)(4)

which provides with respect to classification, that a plan shall:

> (4) provide the same treatment for each claim...of a particular
> class unless the holder of such claim...agrees to less favorable
> treatment"

In the instant case the Fourth Amended Plan ignores and violates §§1122(a) and

1123(a)(4) in general with respect to (i) classification of unsecured claims of each of the

individual debtor estates and, in particular, (ii) the treatment of the general unsecured claim of L.

Londell McMillan, P.C. ("McMillan").

The unsecured creditors of Enterprises provided goods or services only with respect to

the publication and circulation of *The Source* magazine.  The additional unsecured creditors

provided goods and services to the other debtor entities based upon the business that the

particular debtor was engaged.  For example: McMillan and Windels Marx are both creditors of

Source Media and Merchandising, Inc. ("Merchandising").  However, there are no other known

creditors who provided goods or services to Merchandising.  Also, Merchandising is a party to a

license agreement with Hudson Entertainment, Inc. with regard to ringtones.  Since the assets of

Merchandising have fewer claimants with claims against them for services or goods, it is

improper under §1122 to classify McMillan and Windels Marx with all other general unsecured claimants and provide access to these other creditors against the assets of Merchandising.

**Issue (iv): Whether the Plan violates Section 1123(a)(4) of the Bankruptcy Code by providing dissimilar treatment to creditors in the same class.**

McMillan, like Windels Marx, is a creditor of a number of the Debtors, having provided pre-petition legal services to a number of subsidiaries and affiliates, as well as Enterprises and Entertainment. McMillan filed a proof of claim in these chapter 11 cases for the amounts due and owing to it of approximately $500,000.00. McMillan also filed objections to the Debtors' prior plans. However, in accordance with the terms of a Term Sheet, dated September 19, 2007, McMillan agreed with BE/GS, the proponent of the Fourth Amended Plan, to "(a) withdraw its objections to the Plan with prejudice and (b) not to file any additional objection [to] the Plan." (A copy of the Notice of Withdrawal of Objections of L. Londell McMillan P.C. and Agreement to Sell Reorganized Source Common Stock, dated September 20, 2007, is annexed as Exhibit "D" to Windels Marx's Objection to Plan.) In exchange for McMillan's agreement to withdraw its objection to the Debtors' Plan, BE/GS agreed that once the Plan was confirmed and BE/GS was the holder of 85% of the non-consolidated Reorganized Debtor, BE/GS would sell to NorthStar Marketing Group, Inc. ("NorthStar"), an affiliate of McMillan's, a minimum of 9% of the common stock of the Reorganized Debtor for the minimum initial purchase price of $1 million. BE/GS, the proponent and funder of the Debtors' Plan, made this offer to no other general unsecured claimant. When asked whether a deal was struck with North Star after the Fourth Amended Disclosure Statement was approved, J. Scott responded in the affirmative. When questioned whether all of the creditors in these bankruptcy proceedings were provided the opportunity to purchase stock in the reorganized Debtor, J. Scott conceded that he "didn't make it available to them." *Transcript of Confirmation Hearing, September 28, 2007*, page 71:2.

Therefore, as set forth above, the treatment of McMillan's claim, from which the right to object to the Debtors' Plan arises, is different from the treatment of all of the other general unsecured creditors of the Debtors with whom McMillan is currently classified. Also, the treatment of McMillan's claim and objection, from which the right to object arises and the withdrawal of which is consideration for the agreement with NorthStar, is different from the treatment afforded Windels Marx under the Fourth Amended Plan, when Windels Marx' claim is substantially similar to McMillan's.

Section 1129(a)(1) and (2) provides in pertinent part that: "(a) The court shall confirm a plan <u>only</u> if all of the following requirements are met:

*          *          *

> (1) The Plan complies with the applicable provisions of this title.
> (2) The proponent of the plan complies with the applicable provisions of this title.

*          *          *

Not only does the McMillan/NorthStar agreement violate the provisions of chapter 11, but BE/GS, the proponent of the Plan has failed to comply with §1127 of the Code with respect to the modification of the Fourth Amended Plan represented by the McMillan/NorthStar agreement.

**Issue (v):  Whether the modification of the Plan to include the agreement by and among the Reorganized Debtors, Black Enterprise Greenwich Street Corporate Growth Partners, L.P., L. Londell McMillan, P.C. and NorthStar Marketing Group, Inc., to sell Reorganized Source Common Stock upon confirmation of the Plan violates Sections 1127(a), (c), (d), (f)(1) and (f)(2) of the Bankruptcy Code.**

Section 1127(a), (c), (d) and (f)(1) and (2) provide as follows:

**§1127. Modification of plan.**

(a)  The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title.

> After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.

*       *       *

> (c)  The proponent of a modification shall comply with section 1125 of this title with respect to the plan as modified.

> (d)  Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection.

*       *       *

> (f)(1)  Sections 1121 through 1128 and the requirements of section 1129 apply to any modification under subsection (a).
> (2)  The plan, as modified, shall become the plan only after there has been disclosure under section 1125 as the court may direct, notice and a hearing, and such modification is approved.

Section 1127 must be read in conjunction with Bankruptcy Rule 3019.  Bankruptcy Rule 3019 provides:

> In a chapter 9 or chapter 11 case, after a plan has been accepted and before its confirmation, the proponent may file a modification of the plan. If the Court finds after hearing on notice to the trustee, any committee appointed under the Code, and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modifications, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan.

The modification of the Fourth Amended Plan represented by the McMillan/NorthStar Agreement changed the treatment and rights of McMillan under the Plan from the then current treatment of McMillan's claim fixed under the Plan.  Also, creditors such as Windels Marx, whose claims are similar to McMillan's, are not afforded the same treatment as McMillan.  This disparity violates the classification test of §1122 and the treatment test of §1123.

Also, §1127(c) requires that BE/GS comply with §1125 and provide adequate information of the modification and that the Bankruptcy Court approve the adequacy of BE/GS's disclosure. *In re Bloomingdale Partners*, 155 B.R. 961, 971 (Bankr. N.D. Ill. 1993); see also, *In re Concrete Designers, Inc.*, 173 B.R. 354, 356 (Bankr. S.D. Ohio 1994). Bankruptcy Rule 3019 requires that if, after acceptance of a plan but before confirmation, a proponent of a plan seeks to make a modification of the plan, the court must hold a hearing on notice to determine the adequacy of the notice and whether the modification of the plan adversely changes the treatment of a creditor.

In the instant case, the McMillan/NorthStar agreement not only changes the treatment of McMillan's claim from that fixed under the Fourth Amended Plan, but also gives NorthStar rights with respect to (a) the purchase of additional Reorganized Source shares, (b) Reorganized Source's employment of management and professionals, (c) appointment of Reorganized Source's board members and their manner of voting, and (d) veto power over licensing of Reorganized Source's trademark, registration rights, pre-emptive rights, etc. None of these rights were disclosed in the Debtors' Joint Disclosure Statement, provided for in the Fourth Amended Plan and all of which adversely effect the treatment of creditors currently fixed by the terms of the Fourth Amended Plan.

**[INTENTIONALLY LEFT BLANK]**

## CONCLUSION

Windels Marx Lane & Mittendorf, LLP respectfully requests that this case be remanded

for the reasons set forth herein, and grant such other and further relief as this Court deems

proper.

Dated: New York, New York
      January 15, 2008

**WINDELS MARX LANE & MITTENDORF, LLP**

**By:**    **/s/ Charles E. Simpson**
      **Charles E. Simpson (CES-2130)**
      **A Member of the Firm**

156 West 56th Street
New York, New York 10019
(212) 237-1000

Appearing *Pro Se*